**Exie WILSON, Appellant,**

**v.**

**Robert J. LEHMAN, M. D., et al., Appellees.**

Court of Appeals of Kentucky.

May 22, 1964.

William P. Mulloy, Louisville, for appellant.

Kent McElwain, McElwain, Dinning, Clarke & Winstead, John Ballantine, Ogden, Brown, Robertson & Marshall, Louisville, for appellee.

STEWART, Judge.

This is an appeal from a judgment, on a directed verdict, from the Jefferson Circuit Court, dismissing the action of Exie Wilson, appellant herein, against Robert J. Lehman, M.D., and Arthur R. Kasey, M.D., appellees herein. Appellant's complaint alleged she was given electric-shock treatments by appellees without her consent and, further, that the treatments were administered negligently, resulting in permanent disability to her.

The proof for appellant shows no negligence; but this phase of the case is not here on appeal, as she admits there is no proof in this respect. However, she does contend the judgment should be reversed and the case remanded for a trial by jury on the issues of lack of consent to treatment and of the damages that resulted therefrom.

Appellant had 11 shock treatments while hospitalized at the Baptist Hospital in Louisville between May 30 and June 24, 1960. These were administered by appellees, who are psychiatrists. She had for many years suffered from anemia, which required regular medical attention. She also suffered from moods of depression and from the conversion of her anxiety phobias into physical symptoms. As early as 1955, her physician, Dr. Pedigo, had recommended psychiatric help and had arranged for her to be interviewed by Dr. Kasey, but she refused to accept his advice. In April, 1960, following hospitalization for pernicious anemia accompanied by severe vomiting, Dr. Pedigo again suggested shock treatments as a means of relief. Appellant again refused and asked to go home to work out her own problems. Dr. Pedigo's

record for this patient at the hospital states for April 26, "If she does not do well she is willing to return for therapy by Dr. Kasey."

Appellant re-entered the hospital May 30th. Dr. Kasey's record states that she was "willing to take EST if allowed to remain on this floor (the 4th floor for medical patients) and have medicine to quiet anxiety prior to treatments. Agreeable to me." On June 1st, Dr. Kasey noted that she "fears treatments but agrees to take them. Advised she should come to 1C (the psychiatric floor) as more satisfactory program can be carried out. Refused." On June 10th, Dr. Kasey's record said that appellant had had five treatments but needed another three or more, and he again repeated that she insisted on remaining on the medical floor, with the understanding that she would be transferred to the psychiatric floor if the post-shock confusion became great enough to necessitate the move. Dr. Kasey also testified appellant consented to his giving her treatments.

Dr. Lehman then took charge of the patent, as Dr. Kasey went on a vacation. This doctor moved her to the psychiatric floor, gave her six treatments and discharged her at the end of June.

Appellant testified she remembered nothing about her whole stay in the hospital; therefore, she could not say whether or not she consented to the treatments. Her husband claims he gave no consent for the treatments to be given and did not even know about them until appellant was transferred to the psychiatric floor. However, after he found out they were being administered, he did not remove appellant from the hospital or ask that they be discontinued. He also testified, as did Dr. Kasey, that appellant's mental condition did not affect her ability to understand and to make intelligent decisions.

In Tabor v. Scobee, Ky., 254 S.W.2d 474, it was held that, in surgical cases, consent to such procedure must be obtained from

either the patient, or, if the patient is under some disability, from a near relative capable of giving consent.

We have in evidence the doctor's record, as well as his testimony, which indicates appellant consented to the treatments. We also have appellant's statement as to her inability to recall what happened to her at the hospital, plus her submission to all the treatments. And we have appellant's husband's testimony that he did not consent, but that he did not remove her from the hospital or attempt to prevent subsequent treatments even after he found out such were being administered.

In 70 C.J.S. Physicians and Surgeons § 62, p. 991, it is stated: "In the absence of evidence showing that the patient was the victim of false representations, his consent to treatment or to an operation will be presumed from the fact that he voluntarily submitted to it."

We are of the opinion the evidence establishes that appellant is presumed to have consented to the treatments because she voluntarily submitted to them. It follows that the trial court properly directed a verdict for appellees.

It is interesting to note that, while appellant alleged injury because of the treatments, her testimony shows her condition to be much improved since she was under the care of appellees. Her own evidence at the trial was to the effect that she has gained weight, increasing from 80 to 130 pounds; she feels better physically; and she is complimented by her friends on her youthful appearance.

She alleged injury in the form of loss of memory and inability to concentrate. Her own testimony reveals the loss of memory existed several years prior to the treatments. The testimony of Dr. Kasey was that there is usually a loss of memory for two weeks after shock treatments, after which time the memory usually returns except for recollection of the actual period of treatment. Except for this period, there is no proof that appellant's claimed memory loss or her inability to concentrate have any relation to the shock treatments.

Wherefore, the judgment is affirmed.